IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Linda C. SMITH, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Linda C. SMITH, Respondent.

Supreme Court

*No. 2006AP2112–D. Decided March 21, 2008.*

2008 WI 17

(Also reported in 746 N.W.2d 213.)

¶ 1. PER CURIAM. We review the referee Stanley F. Hack's recommendation that we suspend Attorney Linda C. Smith's license to practice law for a period of two years for professional misconduct. This matter

involves 17 allegations of misconduct allegedly committed in connection with a failed business transaction. Neither the Office of Lawyer Regulation (OLR) nor Attorney Smith has appealed the referee's recommendation. Therefore, the matter is submitted to the court for review pursuant to SCR 22.17(2).[1]

¶ 2.   In conducting our review we will affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law de novo. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. In accordance with our authority to supervise the practice of law in this state, we determine the level of discipline that is appropriate under the particular circumstances, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 3.   After independent review of the record, we adopt the referee's findings of fact and conclusions of law. Further, we agree with the referee's recommendation that Attorney Smith's license to practice law in this state be suspended for a period of two years. We also conclude that Attorney Smith should pay restitu-

---

[1] SCR 22.17(2) provides:   Review; appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

tion in one matter as set forth herein and should pay the full costs of this disciplinary proceeding.

¶ 4.   Attorney Smith was admitted to practice law in Wisconsin in 1998. She was administratively suspended on November 1, 2004, for failure to pay state bar dues. She was administratively suspended for failure to complete mandatory continuing legal education (CLE) requirements on June 6, 2005. Both suspensions remain in effect.

¶ 5.   The alleged misconduct in this matter derives from two grievances that were filed by three individuals who were all involved with Attorney Smith in a failed business venture to purchase and operate a restaurant. The first grievance was filed jointly by Dawn Schmidt (Schmidt) and Rose Bryan (Bryan). The second grievance was filed by Sandra Connell (Connell).

¶ 6.   On August 30, 2006, the OLR filed a 17–count complaint against Attorney Smith. Attorney Smith was served with the complaint at her then-current address in North Carolina. She filed an answer, but has not participated further in this disciplinary proceeding. Eventually, a default judgment was granted, and the referee's report and recommendation was filed May 9, 2007. No appeal was filed.

¶ 7.   The record before us reflects that Schmidt met Attorney Smith in 2000, when Attorney Smith moved to Neillsville, Wisconsin, to practice law. Schmidt became Attorney Smith's office assistant in December 2000. In the fall of 2001 Attorney Smith proposed to Schmidt that they purchase and operate a restaurant together called the Moonlite Supper Club. They formed a limited liability company (LLC) called Peridot Ventures, LLC, to undertake this business venture. Attorney Smith was one of the LLC members

and served as attorney and accountant for the LLC. It is undisputed that she completed all the paperwork to create this entity.

¶ 8. On October 22, 2001, Attorney Smith and Schmidt made an offer to purchase Moonlite in their individual names. Connell (the other grievant) represented the sellers. The realtor was Terry Wulff (Wulff). Counteroffers and amended offers were made in the name of the LLC. The LLC was unable to obtain conventional financing, so the parties negotiated a land contract. Attorney Smith drafted and signed the amended offer setting forth these terms. The offer was accepted on January 21, 2002. Attorney Smith handled all the negotiations and drafted the land contract and closing statement for the deal, which closed on February 13, 2002.

¶ 9. The referee found that Schmidt had no money to invest in the LLC venture, and that it was Schmidt's understanding that Attorney Smith would advance the initial capital. Schmidt explained that she would work in the restaurant and that Attorney Smith would do everything else.

¶ 10. Attorney Smith and Schmidt ran the restaurant jointly for about a month, from February 14, 2002, until March 2002. In March 2002 Attorney Smith informed Schmidt that Attorney Smith needed to withdraw from the LLC. Attorney Smith told Schmidt that she would need to pay Attorney Smith $5,060 to compensate her for the money Attorney Smith had invested in the business. Attorney Smith told Schmidt that a judge was pressuring her to close some estates, and Attorney Smith needed the money so it could be put back in her trust account to close the estates.

5

¶ 11.   Schmidt stated that she did not believe she had any choice but to buy Attorney Smith out. Accordingly, Schmidt borrowed $5,060 from her aunt and agreed to allow Attorney Smith to withdraw from the LLC.

¶ 12.   After the buy out, Schmidt hired a certified public accountant to audit the financial condition of the restaurant. Schmidt was informed that Moonlite's business checking account had a negative balance of $13.56, that there was a total of $21,093.49 in cash not accounted for, and $3,777.51 in accounts payable due to vendors, as well as unpaid taxes, unpaid wages and $3,468.12 due to Connell for inventory. Schmidt ran the restaurant until August 2002 when she closed it due to insolvency.

¶ 13.   Attorney Smith closed her Neillsville law office in December 2003 and left Neillsville the next month.

¶ 14.   As noted, the complaint filed by the OLR contained numerous allegations of misconduct related to a variety of questionable business transactions involving Attorney Smith. These incidents will be discussed *seriatim*.

*Improper Administration of Estate.*

■
¶ 15.   The referee found that Attorney Smith engaged in improper transactions in connection with an estate she was administrating in Clark County circuit court, *In the Estate of William M. Jones,* No. 2001PR73. The decedent, Mr. Jones, had no known heirs and his estate had minimal assets. In November 2001 Mid-Wisconsin Bank filed a claim against the Jones estate because of a lien they held on a truck Mr.

Jones had owned. On February 6, 2002, Attorney Smith wrote trust account check number 1137 in the amount of $1,475 to Mid-Wisconsin Bank to satisfy the bank's claim against the Jones estate. However, when she wrote this check, no funds from the Jones estate were on deposit in Attorney Smith's trust account. She later explained that she did not want the estate to lose the vehicle and that is why she satisfied the lien.

¶ 16.   She apparently then told Bryan, Schmidt's mother, that she had purchased a truck for snowplowing (presumably for the restaurant), and asked Bryan to put the title for the truck in Bryan's name. Bryan refused. Attorney Smith eventually induced Schmidt to pay her $1,475 for the truck as part of the buy out of Attorney Smith's interest in the LLC.

*Failure to Pay Real Estate Commission.*

¶ 17.   The OLR alleged and the referee found that Attorney Smith breached an agreement to pay a real estate commission of $8,400 in connection with the restaurant purchase. Attorney Smith first asked Wulff, the real estate agent, if he would allow the LLC to delay paying his commission until the balloon payment on the land contract came due in one year. At that time, Wulff had a legal retainer agreement with Attorney Smith for his real estate business—she was representing some of his clients in other ongoing real estate matters. Nonetheless, Attorney Smith neither reduced this payment agreement to writing nor obtained a written conflict waiver from Wulff.

*Failure to Pay for Inventory.*

¶ 18.   The OLR's complaint alleged further that Attorney Smith apparently agreed to pay Connell, the seller's representative, for the consumable inventory

7

remaining at the restaurant at the time of purchase. However, the land contract closing statement, drafted by Attorney Smith, contained no reference to Connell's inventory. Before the closing, Attorney Smith, Schmidt, Connell and a few other individuals inventoried the consumable goods that would be transferred to the LLC. Attorney Smith had the inventory sheets before the closing and allegedly took them to her office to be typed. At Attorney Smith's request, Connell provided Attorney Smith with receipts for each of the items on the inventory. Attorney Smith later told the OLR that "Ms. Connell oversaw the counting of the inventory as it was her merchandise and she held all the invoices."

¶ 19. After the restaurant opened, Connell asked Attorney Smith several times for the inventory total and the amount owed to her. Each time Attorney Smith told her it was not yet complete. Connell never received payment for the consumable inventory she transferred to the LLC. Subsequent accounting indicated the consumable inventory totaled $3,468.12.

*Liquor License.*

¶ 20. According to the OLR complaint, Attorney Smith asked Bryan to apply for the Class B liquor license, ostensibly because Attorney Smith had an OWI ordinance violation charge pending against her, and Schmidt had an old felony conviction. However, Attorney Smith told the OLR that she never spoke with Bryan about placing the liquor license in Bryan's name and asserted she told Schmidt it was Schmidt's responsibility to arrange for a liquor license.

¶ 21. Bryan stated that she applied for a liquor license at Attorney Smith's request on January 28, 2002. The Town of Pine Valley approved the request,

but a license was not issued because Bryan withdrew her application after Attorney Smith told her that she had negotiated with Connell to leave the liquor license in Connell's name until it expired in June 2002. Attorney Smith later told the OLR that she did not know that the liquor license had remained in Connell's name until it expired in June 2002. Such an arrangement would be contrary to state law.[2]

*Buy out.*

¶ 22.    On April 17, 2002, Schmidt and Bryan went to Attorney Smith's office to complete the buy out. Attorney Smith did not advise Schmidt to obtain independent legal advice regarding Schmidt's purchase of the LLC from Attorney Smith.

¶ 23.    According to the OLR complaint, Attorney Smith prepared and presented Schmidt with a number of documents during the meeting. On Attorney Smith's advice, Bryan agreed to replace Attorney Smith as a member of the LLC. Attorney Smith gave Schmidt two boxes that supposedly contained all of the financial records for Moonlite. At the meeting, Attorney Smith commented to Schmidt and Bryan that she would now be able to put her clients' money back in her trust account.

---

[2] Wisconsin Stat. § 125.04(1) provides that no person may sell alcoholic beverages without the appropriate license. The Moonlite restaurant operation required a retail Class B liquor license. Sections 125.04(13) and 125.66(1) provide for criminal penalties for violations of § 125.04(1). Wisconsin case law has interpreted § 125.04(1) to require the actual owner of the Class B premises to possess the license in his/her own name. *See State v. Eastman*, 148 Wis. 2d 254, 435 N.W.2d 278 (Ct. App. 1988).

*Trust Account Infractions.*

¶ 24.    The OLR alleged that Attorney Smith committed numerous trust account infractions, including using money from her trust account to cover various expenditures made in connection with the restaurant purchase, and using the proceeds obtained from Schmidt in the buy out to replace some of these funds. For example, Attorney Smith used monies from her client trust account to pay the amount due at the land contract closing. She also used monies from her client trust account to belatedly pay for the appraisal of the Moonlight property. She used Schmidt's buy out check to pay back the Jones truck loan. It also appeared that the ledgers in those client matters had been altered.

*Thiede Matter.*

¶ 25.    Smith also used funds from her client trust account belonging to Erwin Thiede to help finance the Moonlite purchase. Thiede, now deceased, was a client of Wulff's, the real estate agent. Thiede had listed several properties with Wulff to sell. Attorney Smith handled a real estate closing for Thiede in July 2001. Attorney Smith held some of the proceeds from the buyer in her trust account pending clearing up liens that were clouding the title. Wulff secured the releases from the judgment creditors himself in the fall of 2001 because Attorney Smith failed to do it. By December 2001 Wulff had completed all the work necessary to complete the real estate transaction.

¶ 26.    On January 9, 2002, a balance of $4,294.99 remained in Thiede's account. Beginning in January of 2002 and continuing for several months, Thiede and Wulff began asking Attorney Smith for the balance of the proceeds due Thiede. Wulff asked Attorney Smith several times to disburse the balance, but she failed to

do so. Thiede eventually withdrew two other properties he had listed for sale with Wulff, and Wulff lost Thiede as a customer.

¶ 27. On April 19, 2002, two days after Attorney Smith deposited Schmidt's $5,060 in her personal account, she wrote a personal check to "Client Trust" in the amount of $4,000 and deposited it in her trust account. The memo line on the check reads "Moonlite."

¶ 28. A few days after depositing the $4,000 check, Attorney Smith wrote trust account check number 1159 in the amount of $3,363.39 to Thiede for the balance of the proceeds due him. On April 22, 2002, Attorney Smith also wrote trust account check number 1157 in the amount of $801.60 to the Clark County Treasurer to pay the balance of back property taxes on the Thiede property, which had been due at the time of closing.

¶ 29. This matter proceeded as a default proceeding. Ultimately, the referee found that the OLR had sustained its burden of proof with respect to each of the 17 allegations of misconduct contained in the complaint. As such, the referee concluded that Attorney Smith committed the following misconduct:

- Two counts of violating former SCR 20:1.15(a)[3] by failing to safeguard client funds.

---

[3] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

This reference to former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(a) provided: Safekeeping property.

- One count of violating SCR 20:1.15(b),[4] by delaying disbursement of client funds to Thiede.

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[4] This reference to former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(b) provided:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

12

• Two counts of violating SCR 20:1.7(b)[5] by representing a client when her representation was materially limited by her own interests in acting as the attorney for the LLC without obtaining written consent from Schmidt, and by entering into the delayed repayment plan with Wulff.

• One violation of SCR 20:1.8(e)[6] when Attorney Smith personally paid the outstanding lien on the Jones truck, thereby providing financial assistance to a client in connection with pending litigation.

• Four counts of engaging in conduct involving dishonesty, fraud and misrepresentation in violation of SCR 20:8.4(c),[7] by (1) converting Thiede's trust account funds to pay for the Jones truck, (2) using trust funds to pay the expenditures of the LLC, and (3) by misrepresenting the financial condition of the venture to

---

[5] Former SCR 20:1.7(b) states:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[6] Former SCR 20:1.8(e) states "[a] lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation . . . ."

[7] Former SCR 20:8.4(c) states that it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

13

Schmidt, including (4) whether there were adequate funds to pay for the inventory and misrepresenting certain disbursements.

- One violation of SCR 20:3.3(a)(1)[8] because one of these false statements about a disbursement was made to the court.

- Two violations of SCRs 20:8.4(a) and (b),[9] respectively, related to her handling of the liquor license.

- Five counts of failure to cooperate with the OLR in violation of SCR 22.03(6).[10]

¶ 30.  The OLR sought and the referee recommended a two-year suspension of Attorney Smith's license to practice law. Although not described as a mitigating factor by the referee, it is noteworthy that Attorney Smith informed the referee that she was injured by a lightning strike in October 2001 and continues to suffer health problems including "gradual decline in physical muscle control, memory and stress

---

[8] Former SCR 20:3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal."

[9] Former SCRs 20:8.4(a) and (b) provide:

> It is professional misconduct for a lawyer to:

> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]

[10] SCR 22.03(6) states that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

management" that induced her to close her practice in 2003. She had not previously been subject to discipline. She also disputed some of the allegations, primarily with respect to the amount of knowledge, information and control Schmidt had over the financial aspects of the failed business. She noted that the grievants' allegations were not made until after they collected unemployment compensation from her office. She adds:

> Lest the Court thinks I take any of these accusations lightly, this is my life and reputation that has been ruined. I have suffered for more than three years with Ms. Schmidt's and her family and friends accusations. I had voiced to OLR in 2004 that I desired to retire my license as I could not afford dues nor attend CLE's for a profession that I could no longer practice.

¶ 31. Attorney Smith no longer practices law in Wisconsin.

¶ 32. On initial consideration of this matter, the court issued an order to show cause inquiring whether restitution might be appropriate in this proceeding. The OLR timely responded to the court's order on September 21, 2007. Attorney Smith did not respond. The OLR now recommends this court order restitution to a creditor of one of the estates administered by Attorney Smith, as follows: To Robert Barth, d/b/a Sav-Rite, in the amount of $425.69, together with interest from November 4, 2003.

¶ 33. The referee's report indicates that Attorney Smith represented in a sworn affidavit that she had disbursed this amount to an estate creditor (Sav-Rite) for an estate she administered when, in fact, she had not made such a disbursement.

¶ 34. We adopt the referee's findings of fact and conclusions of law in these matters. We agree that

Attorney Smith's violations of the Rules of Professional Conduct for Attorneys warrant a two-year suspension of her license to practice law in this state, and we conclude that Attorney Smith should be required to pay restitution as set forth herein, as well as to pay the full costs of this disciplinary proceeding which total $3,504.07 as of May 24, 2007.

¶ 35.   IT IS ORDERED that the license of Attorney Linda C. Smith to practice law in Wisconsin is suspended for a period of two years, effective the date of this order.

¶ 36.   IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Linda C. Smith shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of her inability to pay those costs within that time, the license of Attorney Linda C. Smith to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 37.   IT IS FURTHER ORDERED that that within 60 days of the date of this order, Attorney Linda C. Smith shall pay restitution to Robert Barth, d/b/a Sav-Rite, in the amount of $425.69, together with interest from November 4, 2003.

¶ 38.   IT IS FURTHER ORDERED that if she has not already done so, Attorney Linda C. Smith shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.