2009 WI 65
In the Matter of Disciplinary Proceedings Against Neil R. McKloskey, Attorney at Law: Office of Lawyer Regulation, Complainant,
v.
Neil R. McKloskey, Respondent.
No. 2007AP2135-D.
Supreme Court of Wisconsin.
Opinion Filed: July 7, 2009.
¶ 1 PER CURIAM.
We review a report and recommendation filed by the referee, Stanley F. Hack, recommending this court suspend Attorney Neil R. McKloskey's license to practice law for 60 days and impose the costs of this disciplinary proceeding on him. No appeal has been filed, so the court considers this matter pursuant to SCR 22.17(2).[1]
¶ 2 We adopt the referee's findings of fact and conclusions of law. We agree that Attorney McKloskey's misconduct warrants the suspension of his license to practice law in Wisconsin for a period of 60 days. We also impose the costs of this proceeding on Attorney McKloskey.
¶ 3 Attorney McKloskey was admitted to practice law in Wisconsin in 1976. He received a private reprimand in 2003 for a violation of SCR 20:8.4(f) as illustrated in In re Disciplinary Proceedings Against Gibson, 124 Wis. 2d 466, 369 N.W.2d 695 (1985).
¶ 4 On September 14, 2007, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney McKloskey alleging 11 counts of professional misconduct. Eight counts pertained to alleged trust account violations. Three counts derived from Attorney McKloskey's handling of a complicated wind-up of several matters involving D.C. and T.C. and their now defunct company, TJC.
¶ 5 Attorney McKloskey and OLR stipulated to the trust account anomalies. Briefly stated, these matters had to do with failure to maintain accurate trust accounts that comported with SCR 20:1.15, the "trust account rule." The referee explicitly noted that there was minimal loss to clients as a result of these violations and that Attorney McKloskey had initiated "corrective action" on these trust account issues before being notified of the OLR investigation.
¶ 6 Accordingly, consistent with the parties' stipulation, the referee found that:
 Between 2001 and 2005 Attorney McKloskey deposited client funds to an account that was titled only with the name of Attorney McKloskey's firm and not designated as a trust account, and in doing so, Attorney McKloskey violated former SCR 20:1.15(a)[2] and SCR 20:1.15(b)(2).[3]
 Between 2001 and 2005 Attorney McKloskey maintained an account used for depositing client funds that was not an interest-bearing account with interest being paid to the Wisconsin Trust Account Foundation, Inc., and in doing so, Attorney McKloskey violated former SCR 20:1.15(c)(1)b.[4] and SCR 20:1.15(c)(1m).[5]
 Attorney McKloskey failed to obtain an agreement with a bank between 1999 (when the overdraft rule went into effect) and April 24, 2006, to report overdrafts in a trust account, and failed to provide the OLR with a copy of such an agreement until April 25, 2006, and in doing so, Attorney McKloskey violated former SCR 20:1.15(j),[6] former SCR 20:1.15(n),[7] former SCR 20:1.15(h)(1),[8] and former SCR 20:1.15(h)(8).[9]
 Attorney McKloskey failed to create and maintain a complete set of required trust account records for a period of six years after conclusion of representation, and in doing so, Attorney McKloskey violated former SCR 20:1.15(e)[10] and former SCR 20:1.15(f).[11]
 Attorney McKloskey had shortfalls in an account designated as a trust account such that the balance in the account was less than the amount he was supposed to be holding in trust for clients, and in doing so, Attorney McKloskey violated former SCR 20:1.15(a) (effective through June 30, 2004) and SCR 20:1.15(b)(1).[12]
 Attorney McKloskey retained fees in an account used as a trust account after the fees had been earned, and in doing so, Attorney McKloskey violated former SCR 20:1.15(a) (effective through June 30, 2004) and SCR 20:1.15(b)(3).[13]
 Attorney McKloskey failed to promptly deliver funds belonging to Fox Valley, Ltd., Bruce Dix and Double Grand, or credit fee payments held in an account used as a trust account against the client's outstanding billing statements, and in doing so, Attorney McKloskey violated former SCR 20:1.15(b)[14] and SCR 20:1.15(d).[15]
 Attorney McKloskey inaccurately certified on his State Bar dues statements for the years 2001 through 2005 that he complied with trust account recordkeeping requirements, and in doing so, Attorney McKloskey violated former SCR 20:1.15(g)[16] and SCR 20:1.15(i)(4).[17]
¶ 7 As noted, the remaining three counts of alleged misconduct relate to Attorney McKloskey's handling of a complicated wind-up of several matters involving D.C. and T.C. and their company, TJC. TJC was a small, closely-held business involved in the removal and disposition of oil contaminated soil. Financial problems developed in the late 1990s when a principal customer, Westerfeld Oil Company, Inc. ("Westerfeld"), did not pay its account.
¶ 8 In January 1998 D.C. hired Attorney McKloskey to collect the Westerfeld bill on behalf of TJC. Attorney McKloskey commenced a lawsuit against Westerfeld on February 2, 1998. Over the next year, a series of lawsuits and collection actions were filed against TJC. Attorney McKloskey represented TJC and/or D.C. in various capacities in these actions.[18]
¶ 9 T.C. filed for divorce in April 1999. Attorney McKloskey did not represent either party in the divorce proceeding.
¶ 10 As time progressed, Attorney McKloskey increasingly began taking direction from T.C. and ceased to communicate with D.C. The referee created a timeline of critical events that culminated in the filing of these disciplinary charges against Attorney McKloskey. The record reflects that initially Attorney McKloskey communicated with D.C. directly or with both D.C. and T.C. In December 1999 the Westerfeld trial commenced, and in April 2000 Attorney McKloskey obtained a judgment in favor of TJC in the amount of $283,426.78. Westerfeld appealed, but over the next several years, Attorney McKloskey succeeded in collecting various sums of money in the Westerfeld matter.
¶ 11 In April 2001 Attorney McKloskey advised T.C. that he had received $26,498.23 in the Westerfeld matter, but he failed to advise D.C. these funds had been obtained. By July 2002 Attorney McKloskey had disbursed substantial funds collected in the Westerfeld matter to various persons or entities based on oral instructions he received from T.C.[19] However, D.C. was not made aware of these settlement proceeds and was not asked to approve these payouts. In April 2005 D.C. requested a status update in the Westerfeld matter. After some delays and further inquiries, Attorney McKloskey provided D.C. with an incomplete settlement statement in July 2005.
¶ 12 Eventually, D.C., on behalf of himself and TJC, filed a civil action for malpractice and breach of contract against Attorney McKloskey and his insurer. The action was dismissed on summary judgment on December 20, 2006, because the trial court concluded the corporation was the only entity that could bring such an action. This ruling was affirmed on appeal.
¶ 13 Ultimately, the referee found that Attorney McKloskey distributed judgment proceeds from the Westerfeld matter at T.C.'s oral direction. The referee found that Attorney McKloskey did not notify D.C. of these transactions and did not make any payments to or on behalf of D.C. except for a payment to the Wisconsin Department of Workforce Development. The referee found that during and subsequent to the divorce proceeding, Attorney McKloskey never obtained written consent from D.C. or T.C. for his representation of them or their family business, TJC, despite their potentially conflicting interests.
¶ 14 In proceedings before the referee, Attorney McKloskey advanced a number of affirmative defenses to the charges of misconduct relating to his handling of these matters. He noted that in the civil malpractice action he was found to have represented the company, TJC, not D.C. So, in proceedings before the referee, he argued that issue preclusion should apply, and he took the position that he did not represent D.C. in the Westerfeld litigation.
¶ 15 The referee was not persuaded by these arguments. Wisconsin courts hold that even when there is no express attorney-client relationship, such a relationship may be implied under the circumstances of a particular case, depending on the nature of the work performed and the circumstances under which client confidences may have been divulged. Burkes v. Hales, 165 Wis. 2d 585, 592, 478 N.W.2d 37 (Ct. App. 1991).
¶ 16 As the referee noted, the range of disciplinary charges filed by the OLR was far broader in scope than the malpractice claim. The referee also noted that Attorney McKloskey had represented D.C. on a number of related matters and had communicated directly with him regarding these matters, including consulting him about a $100,000 settlement offer in the Westerfeld matter.
¶ 17 In other words, D.C. reasonably relied on Attorney McKloskey to represent his interests in the Westerfeld matter. Attorney McKloskey also knew about the parties' divorce and knew that it was acrimonious. The referee thus found that "[D.C.] was a client" and noted that Attorney McKloskey's testimony in his own defense "left much to be desired." The referee concluded that "[Attorney] McKloskey should not have blindly accepted oral check writing instructions from [T.C.]."
¶ 18 The referee added:
The manner of handling the final disbursement was in many ways similar to the manner in which the trust account was poorly handled. There were many trust account errors that took years to resolve. The Westerfeld collection was one of only two or three large contingent fee recoveries that [Attorney] McKloskey had in his entire career. It does not make sense to make the large payments to or for [T.C.'s] benefit without the knowledge and approval of [D.C.] . . . . It was unreasonable for [Attorney] McKloskey to assume [T.C.] was telling [D.C.] anything.
¶ 19 Based on these findings, the referee concluded that by undertaking to represent both T.C. and D.C. regarding matters in which both T.C. and D.C. and their company, TJC, had an interest, during and after D.C. and T.C.'s divorce, without consulting with D.C. and T.C. individually regarding the implications of the common representation and the advantages and risks involved, and without obtaining D.C.'s and/or T.C.'s written consent after that consultation; and by subsequently taking actions at the request of T.C. on behalf of her or TJC that potentially adversely impacted D.C., Attorney McKloskey violated former SCR 20:1.7(b).[20]
¶ 20 The referee also concluded that by failing to keep D.C. informed regarding collection efforts on behalf of D.C., T.C., and TJC; and/or failing to inform D.C. when the Westerfeld judgment was paid in full; and/or by failing to consult with D.C. regarding distribution of the final Westerfeld proceeds, Attorney McKloskey violated former SCR 20:1.4(a)[21] and SCR 20:1.4(b).[22]
¶ 21 Finally, the referee concluded that by failing to give D.C. written notice that Attorney McKloskey had received and deposited over $200,000 of funds to which D.C. asserted or actually held a financial interest to an account used as a client trust account; and/or failed to pay to D.C. any of these funds; and/or failed to provide D.C. with any accounting, Attorney McKloskey violated former SCR 20:1.15(b) (effective through June 30, 2004).
¶ 22 We adopt the referee's findings of fact and conclusions of law and turn to the question of the appropriate sanction for Attorney McKloskey's misconduct.
¶ 23 The referee recommended we suspend Attorney McKloskey's license to practice law for 60 days and further recommended that he be responsible for all costs in the matter.
¶ 24 In assessing appropriate discipline, this court considers the seriousness of the conduct as well as the need to protect the public, the courts, and the legal system from repetition of misconduct. See In re Disciplinary Proceedings Against Arthur, 2005 WI 40, ¶78, 279 Wis. 2d 583, 694 N.W.2d 910. The court also seeks to deter other attorneys from engaging in similar misconduct. Id.
¶ 25 Each disciplinary case is, of course, unique, but this court generally considers suspension appropriate for cases involving extensive trust account violations and failure to manage client conflicts appropriately. See, e.g., In re Disciplinary Proceedings Against McNeely, 2008 WI 91, 313 Wis. 2d 283, 752 N.W.2d 857 (attorney suspended for 60 days for giving settlement proceeds to decedent's widow without providing notice to the decedent's estate which had possible claims); In re Disciplinary Proceedings Against Smith, 2008 WI 17, 308 Wis. 2d 1, 746 N.W.2d 213 (attorney suspended for two years for 17 counts of misconduct committed in connection with a failed business transaction with lawyer's assistant); and In re Disciplinary Proceedings Against Mandelman, 158 Wis. 2d 1, 460 N.W.2d 749 (1990) (27 rule violations involving multiple clients warranted one-year suspension). However, considering the facts of these cases, we conclude that the Smith matter warranted more severe discipline because there were more numerous types of misconduct including charges of dishonesty amid allegations the trust account ledgers had been altered.
¶ 26 Here, eight of the alleged counts of misconduct involved sloppy and careless trust account violations. Accurate trust account records are important to ensure clients and the public have confidence in an attorney's management of client funds. We are mindful, however, that the referee found clients were not adversely affected by the trust account anomalies that occurred here. Attorney McKloskey stipulated to this misconduct and argued, in mitigation, that he relied on an assistant to handle these matters.
¶ 27 The remaining three counts of misconduct reflect serious errors of judgment, but again, there was no finding that Attorney McKloskey was dishonest or that he benefited financially from the misconduct he committed in connection with these complex and interrelated matters. Therefore, we agree that a 60-day suspension is reasonable in this case. The referee also recommended the court impose the costs of this litigation on Attorney McKloskey, and we accept that recommendation as well.[23]
¶ 28 IT IS ORDERED that the license of Neil R. McKloskey to practice law in Wisconsin is suspended for a period of 60 days effective August 17, 2009.
¶ 29 IT IS FURTHER ORDERED that Neil R. McKloskey shall comply with the requirements of SCR 22.26 pertaining to activities following suspension if he has not already done so.
¶ 30 IT IS FURTHER ORDERED that within 60 days of the date of this order, Neil R. McKloskey shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Neil R. McKloskey to practice law in Wisconsin shall remain suspended until further order of the court.
NOTES
[1] SCR 22.17(2) states:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.
[2] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. See S. Ct. Order 04-07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06-04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the Wisconsin Supreme Court Rules will be to those in effect at the time of the misconduct.

Former SCR 20:1.15(a) applies to misconduct committed prior to July 1, 2004. It provided:
A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation this provision shall not supersede the trust account rules of such other state.
[3] SCR 20:1.15(b)(2) applies to misconduct committed after July 1, 2004. It provides as follows: Identification of account.

Each trust account shall be clearly designated as a "Client Account," a "Trust Account," or words of similar import. The account shall be identified as such on all account records, including signature cards, monthly statements, checks, and deposit slips. An acronym, such as "IOLTA,"" IOTA," or "LTAB," without further elaboration, does not clearly designate the account as a client account or trust account.
[4] Former SCR 20:1.15(c)(1)b. applies to misconduct committed prior to July 1, 2004. It provided:

The interest accruing on this account, net of any transaction costs, shall be paid to the Wisconsin Trust Account Foundation, Inc., which shall be deemed the beneficial owner thereof. A lawyer may notify the client of the intended use of these funds.
[5] SCR 20:1.15(c)(1m) applies to misconduct committed after July 1, 2004. It provides as follows:

The interest accruing on an account under par. (1), less any transaction costs, shall be paid to the Wisconsin Trust Account Foundation, Inc., which shall be considered the beneficial owner of the accrued interest, pursuant to SCR Chapter 13, Interest on Trust Accounts Program. A lawyer may notify the client of the intended use of these funds.
[6] Former SCR 20:1.15(j) applies to misconduct committed prior to July 1, 2004. It stated:

In the event any properly payable instrument is presented against a lawyer trust account containing insufficient funds, whether or not the instrument is honored, the financial institution or investment institution shall, simultaneously with the customary overdraft notice to the depositor or investor, report the overdraft to the office of lawyer regulation.
[7] Former SCR 20:1.15(n) applies to misconduct committed prior to July 1, 2004. It stated, "Every lawyer practicing or admitted to practice in this state shall comply with the reporting and production requirements of this rule."
[8] Former SCR 20:1.15(h)(1) applies to misconduct committed between July 1, 2004, and June 30, 2007. It provided that "[a] lawyer shall maintain demand trust accounts only in a financial institution that has agreed to provide an overdraft report to the office of lawyer regulation under SCR 20:1.15(h)(3)."
[9] Former SCR 20:1.15(h)(8) applies to misconduct committed between July 1, 2004, and June 30, 2007. It stated, "Every lawyer practicing or admitted to practice in Wisconsin shall comply with the reporting and production requirements of SCR 20:1.15(h)."
[10] Former SCR 20:1.15(e) applies to misconduct committed prior to July 1, 2004. It provided as follows:

Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.
[11] Former SCR 20:1.15(f) applies to misconduct committed between July 1, 2004, and June 30, 2007. It stated: Record-keeping requirements for trust accounts.

(1) Demand accounts. Complete records of a trust account that is a demand account shall include a transaction register; individual client ledgers; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:
a. Transaction register. The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:
1. the date, source, and amount of all deposits;
2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;
3. the date and amount of every other deposit or deduction of whatever nature;
4. the identity of the client for whom funds were deposited or disbursed; and
5. the balance in the account after each transaction.
b. Individual client ledgers. A subsidiary ledger shall be maintained for each client or matter for which the lawyer receives trust funds, and the lawyer shall record each receipt and disbursement of that client's funds and the balance following each transaction. A lawyer shall not disburse funds from the trust account that would create a negative balance with respect to any individual client or matter.
c. Ledger for account fees and charges. A subsidiary ledger shall be maintained for funds of the lawyer deposited in the trust account to accommodate monthly service charges. Each deposit and expenditure of the lawyer's funds in the account and the balance following each transaction shall be identified in the ledger.
d. Deposit records. Deposit slips shall identify the name of the lawyer or law firm, and the name of the account. The deposit slip shall identify the amount of each deposit item, the client or matter associated with each deposit item, and the date of the deposit. The lawyer shall maintain a copy or duplicate of each deposit slip. All deposits shall be made intact. No cash, or other form of disbursement, shall be deducted from a deposit. Deposits of wired funds shall be documented in the account's monthly statement.
e. Disbursement records.
1. Checks. Checks shall be pre-printed and pre-numbered. The name and address of the lawyer or law firm, and the name of the account shall be printed in the upper left corner of the check. Trust account checks shall include the words "Client Account," or "Trust Account," or words of similar import in the account name. Each check disbursed from the trust account shall identify the client matter and the reason for the disbursement on the memo line.
2. Canceled checks. Canceled checks shall be obtained from the financial institution. Imaged checks may be substituted for canceled checks.
3. Imaged checks. Imaged checks shall be acceptable if they provide both the front and reverse of the check and comply with the requirements of this paragraph. The information contained on the reverse side of the imaged checks shall include any endorsement signatures or stamps, account numbers, and transaction dates that appear on the original. Imaged checks shall be of sufficient size to be readable without magnification and as close as possible to the size of the original check.
4. Wire transfers. Wire transfers shall be documented by a written withdrawal authorization or other documentation, such as a monthly statement of the account that indicates the date of the transfer, the payee, and the amount.
f. Monthly statement. The monthly statement provided to the lawyer or law firm by the financial institution shall identify the name and address of the lawyer or law firm and the name of the account.
g. Reconciliation reports. For each trust account, the lawyer shall prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days. Each reconciliation report shall show all of the following balances and verify that they are identical:
1. the balance that appears in the transaction register as of the reporting date;
2. the total of all subsidiary ledger balances for IOLTA accounts and other pooled accounts, determined by listing and totaling the balances in the individual client ledgers and the ledger for account fees and charges, as of the reporting date; and
3. the adjusted balance, determined by adding outstanding deposits and other credits to the balance in the financial institution's monthly statement and subtracting outstanding checks and other deductions from the balance in the monthly statement.
(2) Non-demand accounts. Complete records of a trust account that is a non-demand account shall include all of the following:
a. all monthly or other periodic statements provided by the financial institution to the lawyer or law firm; and
b. all transaction records, including passbooks, records of electronic fund transactions, duplicates of any instrument issued by the financial institution from funds held in the account, duplicate deposit slips identifying the source of any deposit, and duplicate withdrawal slips identifying the purpose of any withdrawal.
(3) Trust property other than funds.
a. Property ledger. A lawyer who receives trust property other than funds shall maintain a property ledger that identifies the property, date of receipt, owner, client or matter, and location of the property. The ledger shall also identify the disposition of all of the trust property received by the lawyer.
b. Receipt upon taking custody. Upon taking custody of any trust property described in sub. (f)(3)a., the lawyer shall provide to the previous custodian a signed receipt, with a description of the property and the date of receipt.
c. Dispositional receipt. Upon disposition of any trust property described in sub. (f)(3)a., the lawyer shall obtain a signed receipt, with a description of the property and the date of disposition, from the recipient.
(4) Electronic record retention.
a. Back-up of records. A lawyer who maintains trust account records by computer shall maintain the transaction register, client ledgers, and reconciliation reports in a form that can be reproduced to printed hard copy. Electronic records must be regularly backed up by an appropriate storage device.
b. IOLTA account records. In addition to the requirements of sub. (f)(4)a., the transaction register, the subsidiary ledger, and the reconciliation report shall be printed every 30 days for the IOLTA account. The printed copy shall be retained for at least 6 years, as required under sub. (e)(6).
[12] SCR 20:1.15(b)(1) applies to misconduct committed after July 1, 2004. It provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.
[13] SCR 20:1.15(b)(3) applies to misconduct committed after July 1, 2004. It states, "No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."
[14] Former SCR 20:1.15(b) applies to misconduct committed prior to July 1, 2004. It provided as follows:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.
[15] SCR 20:1.15(d) applies to misconduct committed after July 1, 2004. It states:

(1) Notice and disbursement. Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.
(2) Accounting. Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property.
(3) Disputes regarding trust property. When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved. Disputes between the lawyer and a client are subject to the provisions of sub. (g)(2).
[16] Former SCR 20:1.5(g) applies to misconduct committed prior to July 1, 2004. It provided:

A member of the State Bar of Wisconsin shall file with the State Bar annually, with payment of the member's State Bar dues or upon such other date as approved by the Supreme Court, a certificate stating whether the member is engaged in the private practice of law in Wisconsin and, if so, the name of each bank, trust company, credit union or savings and loan association in which the member maintains a trust account, safe deposit box, or both, as required by this section. Each member shall explicitly certify therein that he or she has complied with each of the record-keeping requirements set forth in paragraph (e) hereof. A partnership or professional legal corporation may file one certificate on behalf of its partners, associates, or officers who are required to file under this section. The failure of a member to file the certificate required by this section is grounds for automatic suspension of the member's membership in the State Bar in the same manner as provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action. The State Bar shall supply to each member, with the annual dues statement or at such other time as directed by the Supreme Court, a form on which the certification must be made and a copy of this rule.
[17] SCR 20:1.15(i)(4) applies to misconduct committed after July 1, 2004. It states:

The failure of a state bar member to file the certificate is grounds for automatic suspension of the member's membership in the state bar in the same manner provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action.
[18] For example, on March 26, 1998, E.G., a supplier of TJC, started a collection action against TJC and D.C. and T.C. individually. Attorney McKloskey represented D.C., T.C., and TJC in this matter, but there was no fee agreement. On November 6, 1998, R.H., another supplier to TJC, started a collection action against D.C. and TJC. Attorney McKloskey represented D.C. and TJC in this action as well.
[19] In addition to payments of taxes and other debts owed by TJC, the checks Attorney McKloskey's office prepared included a $2,000 check to F.K and C.K., former employees of TJC and friends of T.C.'s; an $8,980 check payable to T.C. for "Taxes 99-01"; a $17,461.79 check payable to "[T.C.], Neal & Beverly [M.]" (T.C.'s parents) labeled, "Per [T.C.] (Legal Exp.)"; a $30,405.99 check to the IRS for "(TJC Inc.) Outstanding taxes due [T.C.]" and giving T.C.'s personal social security number; and the remainder, $27,878.85, paid to T.C.
[20] Former SCR 20:1.7(b) applies to misconduct committed prior to July 1, 2007. It provided as follows:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
[21] Former SCR 20:1.4(a) applies to misconduct committed prior to July 1, 2007. It stated "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."
[22] SCR 20:1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."
[23] On December 23, 2008, the OLR filed a statement of costs in the amount of $37,431.08.